OSCAR SMITH, Respondent, v. THE HAMMOND PACKING CO., Appellant.

Kansas City Court of Appeals, February 27, 1905.

MASTER AND SERVANT: Place of Work: Assumption of Risk: Evidence. The master must furnish a reasonably safe place of work but the servant assumes such risks as are incident to the business; and on the evidence in this case the servant's injuries in receiving a cut is held to be an incident of the business and not the result of a short table on which to work.

Appeal from Buchanan Circuit Court.—*Hon. A. M. Woodson*, Judge.

REVERSED.

*Mosman & Ryan* for appellant.

(1) We cite the following authorities in support of our contention that the demurrer asked for by the defendant should have been given. Jackson v. Railroad, 104 Mo. 457; Thompson v. Railway, 109 Mo. 198; Holloran v. Iron Co., 133 Mo. 476, 477; Fugler v. Boothe, 117 Mo. 493; Junior v. Light Co., 127 Mo. 83; Steinhauser v. Spraul, 127 Mo. 526; Nugent v. Milling Co., 131 Mo. 245, 256; Bradley v. Railroad, 138 Mo. 302; Winkler v. Basket Co., 137 Mo. 399; Marshall v. Hay Press Co., 69 Mo. App. 260; Cothron v. Pkg. Co., 98 Mo. App. 343; Adolph v. Baking Co., 100 Mo. 209; Stalzer v. Pkg. Co., 84 Mo. App. 565; Wray v. Light Co., 68 Mo. App. 380.

*W. K. Amick* for respondent.

(1) Plaintiff did not assume the risks which arose out of the neglect of the defendant to provide a table long enough for the men to do their work with reason-

able degree of safety to each other. Wendler v. Fur. Co., 165 Mo. 527; Curtis v. McNair, 173 Mo. 279; Pauck v. Beef Co., 159 Mo. 467; Settle v. Railroad, 127 Mo. 467; Welden v. Railway, 93 Mo. App. 668.

BROADDUS, P. J.—The plaintiff claims damages as the result of an injury occasioned by the alleged negligence of defendant while he was in its employ. The defendant is a corporation engaged in the meat packing business at St. Joseph, Missouri, and was so engaged at the times hereinafter mentioned. In September, 1903, the plaintiff and other employees of defendant were at work in defendant's establishment in what was known as the "hog cutting gang." These workmen were employed at a certain table several feet in width and from eight to twelve feet in length and which was constructed in the form of an L, one end of which pointed north and the other end east. The hogs to be cut into different parts were transferred to the north end of the table by an overhead track from which they were suspended by hooks. They were received one at a time by a workman standing on the end of the table at that point who cut them into halves and let them fall upon the table when another workman passed the halves, one at a time, to plaintiff, whose business it was to saw through the bone that connected the ham to the body of the hog; after which it was passed to the cutter, one Jesse Clevenger, who with a knife severed the ham from the other part of the hog whereupon a boy removed the ham. Next to the boy another workman was placed who transferred the meat to yet another man who was known as the "block tender" and who moved the meat onto a block to be chopped in pieces. By this arrangement six persons were required to work at this table. The plaintiff was injured by a cut on the hand from the knife being used by said Clevenger.

The ground plaintiff relies on for his cause of action is that the defendant was guilty of negligence in

not providing him a safe place in which to perform his labor. Or, in other words, that the table was not long enough to afford space sufficient for the number of workmen engaged to do their work in safety, and that his injury was the result of want of such space. The evidence disclosed that there was not more than eighteen inches space between the feet of the men as they stood at the table and that their bodies frequently during the work would come in contact. The plaintiff's case in the main consists of the evidence of himself and the cutter, Jesse Clevenger. The plaintiff was stationed in the angle of the table facing west, the said Clevenger next east, facing south. Plaintiff on his examination in chief was asked: "How did your finger happen to be cut, and who cut it?" His answer was: "Jesse Clevenger. While I was sawing with the other hand (right hand) he was cutting one ham and as I moved the ham he cut it (his hand) on account of being crowded so close in the angle at the table." On cross-examination he was asked: "In passing this meat, you say that when the bone came in two you gave it a little shove?" A. "Yes, sir." Q. "Was that the time you were cut?" A. "No, sir. I had hold of it, sawing it, when he came out with his knife." Q. "Did he cut you before you gave the shove?" A. "Yes, sir."

Witness Clevenger, after stating that he cut plaintiff, was asked how he came to do it. His answer was: "I was cutting off a ham, and to the best of my knowledge he was sliding a side up to me again. He had moved the side twice; he pulled it to him and sawed it, and pulled it away again; and it seemed to me that he pulled it to me, and I was making a cut and cut him." On cross-examination he was asked: "And you were cutting a ham in which you had the meat in position at the time you cut Smith?" A. "Yes, sir." Q. "Were you cutting or attempting to cut, the ham that Smith was passing to you?" A. "No, sir." Q. "Then, if that is true, when Smith went to pass the other piece

of meat over to you, he must have passed his hand far enough to reach your knife before you cut it?" A. "Yes, sir. A man can not gauge the distance, though."

It was shown that from 250 to 300 hogs passed over the table each hour; therefore, the work was carried on with great rapidity. One stroke of the saw alone was sufficient to sever the bone that connected the ham with the body of the hog, and a single stroke of the knife through the flesh completed the severance.

It will be seen that plaintiff and witness Clevenger differ as to the manner in which the injury was inflicted. The plaintiff's statement was that while he was in the act of severing the bone with the saw he was cut by the knife in the hands of Clevenger. And by the latter that plaintiff's hand came in contact with the knife he was using on the meat in position before him. The position which the two occupied at the table placed the witness behind plaintiff. It was, therefore, impossible for witness to have cut plaintiff while he was sawing the bone, unless he reached his knife around his body—of which there is no evidence. It could only have occurred as stated by Clevenger: that is, by plaintiff shoving the meat around to him with his left hand, the cut on the hand being made while he was so doing. Evidently, plaintiff did not know how he was injured. And it is in nowise remarkable that such was the fact, for the work was performed, as before stated, with great rapidity, about ten pieces passing through his hands every minute. The work was dangerous and the workmen were in the habit of exercising much care to prevent injury to one another.

The jury returned a verdict for the plaintiff and defendant appealed. The defendant at the close of plaintiff's evidence asked the court to instruct the jury to find for the defendant, which the court refused; and a similar instruction was asked at the close of all the testimony, which the court also refused.

The only question presented for our consideration

is, was the crowded condition of the table, owing to its insufficiency, the cause of the plaintiff's injury? Are we to infer that had the table been longer and plaintiff separated by a greater space from Clevenger that the injury would not have been inflicted? When plaintiff, after sawing the bone, passed the meat to Clevenger, would a greater space have prevented him from placing his left hand in danger? It is true that had the space been greater his hand would have had to pass further before it reached danger, but would that condition alone warrant us in saying that it was the crowded condition of the workmen for want of space to which we must attribute the result? We are not to assume that which would probably result from the conditions thus existing, but what actually did occur.

Considering the case from another point of view, the injury might have been inflicted had the table afforded more space for the workmen. In the hurry of the work the hand of the sawyer in passing the meat to the cutter was liable, except with the exercise of the utmost care and caution, at times to come into contact with the knife wielded by the latter. The injury received by the plaintiff, so far as disclosed by the evidence, seems to have been the result of one of the hazards of the business. Both plaintiff and witness Clevenger were skilled workmen and knew the dangerous nature of the employment. And while it is the duty of the master to furnish the servant with a reasonably safe place in which to do his work, yet the servant assumes such risks as are incident to the business. [Price v. Railway, 77 Mo. 508; Stalzer v. Packing Co., 84 Mo. App. 565; Cothron v. Packing Co., 98 Mo. App. 394; Wray v. Electric Light Co., 68 Mo. App. 387.]

For the reasons given the cause is reversed. All concur.